**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**


**ROBERT EUGENE JOHNSON**                                                **PETITIONER**
**ADC # 078181**


**VS.**                              **5:15-CV-00138-KGB-JTR**


**WENDY KELLEY, Director,**
**Arkansas Department of Correction**                              **RESPONDENT**


## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

## I. Background

On April 30, 2015, Petitioner Robert Eugene Johnson ("Johnson") initiated this 28 U.S.C. § 2254 habeas action.[1]  Before addressing the merits of Johnson's claims, the Court will review the procedural history of the state court conviction that he is now collaterally attacking.

On June 17, 2009, a Pulaski County jury found Johnson guilty of: (1) possession of cocaine with intent to deliver; and (2) resisting arrest.  *Doc. 9-2*.  He received an aggregate 40-year sentence as a habitual offender.  *Id*.

Johnson appealed to the Arkansas Court of Appeals, where he argued that the trial court erred in instructing the jury that flight could be considered as evidence of guilt.  On October 6, 2010, the Court affirmed.  *Johnson v. State*, 2010 Ark. App. 669, 2010 WL 3902706 (2010).  On October 28, 2010, the mandate issued.  *Doc. 6-6*.

Johnson did not file a petition for review with the Arkansas Supreme Court. He also did not pursue any post-conviction relief in state court.

On September 17, 2012, Johnson filed a § 2254 habeas action challenging his state court conviction.  *See Johnson v. Hobbs*, Eastern District of Arkansas

---

[1]  *See Doc. 1* at 13 (indicating that Johnson mailed the Petition on April 30, 2015).  The Petition was filed on May 4, 2015.

Case No. 5:12-CV-00370-KGB-JTR ("*Johnson I*").  He argued that: (1) the prosecution withheld impeachment evidence in violation of *Brady*;[2] and (2) his lawyer was ineffective for not investigating his case adequately and not obtaining the *Brady* material.[3]

Respondent, Ray Hobbs, contended that Johnson's habeas claims should be dismissed because they were: (1) barred by the statute of limitations; *and* (2) procedurally defaulted.[4]

On December 17, 2014, the Court entered a Recommended Disposition suggesting that Johnson's habeas case be dismissed, without prejudice, so that he could exhaust his *Brady* claim in state court.[5]

On January 14, 2015, Johnson filed a petition for leave to seek a writ of error *coram nobis* with the Arkansas Supreme Court.[6]  He asked the appellate court to reinvest the trial court with jurisdiction to consider the alleged *Brady* violation.

---

[2]  *See Brady v. Maryland*, 373 U.S. 83 (1963).

[3]  *See Johnson I*, at *Doc. 2*.

[4]  *Id*. at *Doc. 9*.

[5]  *Id.* at *Doc. No. 26*.  The Court did not address whether Johnson's habeas claims were timely.  *See Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) ("When a state court remedy is available for a state prisoner's unexhausted claims, the federal habeas court must defer action until the claim is exhausted, . . . by dismissing the federal petition without prejudice . . .").

[6] *Doc. 6-7*.

On April 7, 2015, the United States District Court approved and adopted, in part, the Recommended Disposition[7]  and entered a Judgment dismissing *Johnson I*, without prejudice.

On April 9, 2015, the Arkansas Supreme Court denied Johnson *coram nobis* relief.[8]  While acknowledging that an alleged *Brady* violation could be cause for granting the writ, the Court held that Johnson had "not met his burden to show that the proposed attack on the judgment is meritorious:"[9]

> Petitioner alleges that Hastings was named in at least sixteen disciplinary complaints beginning in 2008.  However, he does not identify how many of those disciplinary complaints occurred prior to the date of his trial.  Petitioner describes only generally what he contends was withheld.   He does not describe the complaints specifically, and he does not indicate the dates filed, who made the alleged withheld complaints, or what concerning the complaints should have been available and used to impeach Hastings.  As noted above, a bare assertion with no factual support does not justify reinvesting jurisdiction in the trial court, and petitioner's assertions fall far short of carrying his burden to demonstrate that his claim has merit.[10]

On April 30, 2015, Johnson initiated this federal habeas action ("*Johnson II*") and reasserted the same habeas claims originally raised in *Johnson I*:  (1) the

---

[7]  *Id*. at *Doc. Nos. 28 & 29*.   In the District Court's Order, it clarified that a stand-alone actual innocence claim may be cognizable, even in a non-capital case.  *Id*. at Doc. No. 28 at p. 1 (citing *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.").

[8]  *Doc. 6-9*.

[9]  *Id*. at 3.

[10]  *Id*.

4

prosecution withheld impeachment evidence in violation of *Brady*; and (2) his lawyer was ineffective for failing to adequately investigate his case and to obtain the *Brady* material.  In addition, he raises as a *new claim* his "actual innocence," both to excuse his filing delay and as a "freestanding claim."[11]

Respondent argues that the Court should dismiss Johnson's habeas claims because they are:  (1) barred by the statute of limitations; and (2) procedurally defaulted.  With regard to his claim of actual innocence, Respondent contends that Johnson has failed to make the strong showing required to state such a claim.[12]

For the reasons discussed below, the Court recommends that this case be dismissed, with prejudice, because all of Johnson's habeas claims are time-barred.

## II. Discussion

### A.    "New Evidence" Allegedly Supporting Johnson's *Brady* Claim and Ineffective Assistance of Counsel Claim

According to Johnson, at trial the prosecution withheld evidence of prior misconduct by Joshua Hastings ("Hastings"), the Little Rock Police Department ("LRPD") officer who arrested him and who provided much of the trial evidence

---

[11] *Doc. 1* at ¶¶ 39 and 40.  Respondent argues that Johnson has not properly asserted a "gateway claim" of actual innocence to excuse his untimeliness and procedural default. Liberally construing Johnson's habeas papers, as it is required to do, the Court concludes that he has adequately asserted a gateway claim of actual innocence as grounds to excuse his otherwise barred claims.

[12] *Doc. 6.*

that supported his convictions.   Johnson argues he could have used that evidence, on cross-examination, to impeach Hastings and to support the argument that:  (a) Hastings "planted" the drugs found at the crime scene;  and (2)  Hastings was the aggressor in a fight that took place before his arrest.

At trial, Hastings testified that, on June 9, 2008 at around 1:30 a.m., he responded to a call at 11th Street in Little Rock.[13]  When he arrived on the scene, he saw three African-American men standing in the street near a pickup truck. One of the men, Johnson, turned, saw Hastings, threw a plastic baggie under the pickup truck, and fled on foot.[14]  Hastings chased Johnson and took him into custody after a "small altercation."[15]

Chad O'Kelley, another LRPD officer, testified that, when he arrived at the scene, the foot chase involving Johnson and Hastings was already underway. O'Kelley assisted Hastings in subduing Johnson.  Hastings then directed O'Kelley to search near a pickup truck.  O'Kelley found a baggie containing crack cocaine within two feet of where Hastings had directed him to search.[16]

---

[13]  *Doc. 6-11* at 16.
[14]  *Id*. at 17.
[15]  *Id*.
[16]  *Doc. 6-11* at 57-59.

6

After arresting Johnson, Hastings testified that he conducted a search along the path Johnson had used to flee. Hastings found $185 in cash on the ground.[17] In one $20 bill Hastings found a small rock of cocaine.[18] According to Hastings, when he took Johnson into custody, Johnson spontaneously stated "make sure you get my money."[19]

During his trial Johnson elected not to testify or call any witnesses. Now, however, he alleges a version of events that is in sharp conflict with the evidence presented during his trial. According to Johnson, after Hastings stopped him on the street, he held out some "contraband," and asked Johnson: "What's this?" Johnson denied knowing anything about the "contraband" and turned to leave. Hastings and O'Kelley then attacked Johnson, placed him in handcuffs, and put him in a patrol car. During the ride to jail, Hastings allegedly told Johnson that he would be charged with possessing the "planted" crack cocaine unless he agreed to become an informant. When he declined the offer, Hastings warned him "to keep [his] mouth shut about the incident or suffer consequences," a threat Johnson believed "Hastings would have made good on . . ."[20]

---

[17] *Doc. 6-11* at 17-18.
[18] *Id.* at 18.
[19] *Id.* at 21.
[20] *Id*. at 3-4.

7

In his habeas papers, Johnson asserts that his fear for his own safety and the safety of his family prevented him from testifying to the "real facts" at trial. While he admits that he told his trial attorney the "real facts," he contends she advised him that Hastings "had some powerful friends," and that if Johnson "wished to avoid a life sentence," he should "keep [his] mouth shut."[21]

Importantly, Johnson admits that, *at the time of his arrest*, he *knew* Hastings had a reputation for unlawfully targeting African-Americans:

> On June 9, 2008, I was enjoying the day by fellowshipping with friends on a street in Little Rock when we noticed Little Rock Police Officers approaching. Talk on the street was that there was a young officer working this area who is the son of Lt. Terry Hastings, then spokesman for the Little Rock Police Department.
>
> Everyone knew Lt. Hastings from watching him for years on the news. Word was circulating that Josh Hastings, the Lt.'s son, was a Racist and a Bully who systematically targeted blacks for arrest and unjustified, unreported beatings. It was said that Patrolman [Josh] Hastings was getting away with this behavior because his father was pulling strings and calling on favors. People were scared of Officer [Josh] Hastings.[22]

In September of 2012, over three years *after* his conviction, Johnson asserts that he read newspaper reports documenting Hastings' involvement "in at least 16

---

[21] *Id.* at 5.  On its face, this story is highly implausible.  At the time Hastings arrested Johnson, he had only been a police officer for two years.  Given his lack of seniority or rank, it is hard to believe the contention that he was too powerful to oppose.  Similarly, it is hard to believe that his trial counsel told him not to tell the truth about facts which, if believed, would have led to his acquittal, because Hastings supposedly had "some powerful friends."

[22] *Id.* at 2-3.

separate disciplinary complaints."[23]  Johnson contends that, only after Hastings'

"chronic misconduct made the news," was he placed on notice of the habeas claims

he is now asserting in this action.[24]

The "news" Johnson refers to involved an incident that occurred on August

12, 2012, when Hastings shot and killed a fifteen-year-old African-American while

investigating a car break-in at an apartment complex in Little Rock.  Hastings was

subsequently charged with manslaughter.  Both his first and second trials ended in

hung juries, after which the State decided to *nolle prosse* the case.[25]  Both of

Hastings' trials were highly publicized in central Arkansas.

Johnson has attached to his habeas papers four newspaper articles that

appeared in the ARKANSAS DEMOCRAT-GAZETTE in September and October of

2012.[26]  According to these articles, Hastings was hired by the LRPD sometime in

2007.  Between 2008 and 2012, Hastings was: (1) "named in at least 18

[disciplinary] complaints ...;" and (2) "at least six [of the 18 complaints] were

---

[23] *Id.*

[24] *Id.* at 5.

[25] *See generally State v. Hastings*, Pul. Co. Cir. Ct. No. CR 13-224, available online at: http://www.pulaskiclerk.com.

[26] *Doc. 1* at pp. 14-19.  The articles attached to Johnson's current petition are, for the most part, illegible.  Two of the four articles were attached, in a legible form, to Johnson's first habeas petition.  *See Johnson 1, Doc. 2* at 11-14.  The Court has obtained from Lexis legible copies of the other two articles, which are attached to this Recommended Disposition as "Court's Exhibit 1 and 2."

sustained, resulting in 34 days of missed work spread over six suspensions[.]"[27] These news reports also noted that supervisors complained that Hastings was "insubordinate, showed a 'reckless disregard for public safety, damaged department property, used profanity, missed court dates, slept on the job, and lied to other officers."[28]

In late 2012, as a result of the shooting incident, Hastings was fired by the LRPD for "serious misconduct"[29] that included "conduct unbecoming an officer or neglect of duty" and being "untruthful" "during interviews with internal investigators."[30]

Johnson makes the conclusory argument that Hastings' *entire disciplinary record* constitutes *Brady* material which his attorney should have discovered and used to impeach Hastings' trial testimony and corroborate Johnson's version of events.[31]  He faults his trial counsel for not discovering the existence of those

---

[27] *Johnson I*, *Doc. 2 at 11-14*.

[28] *Johnson I*, *Doc. 2 at 14*.

[29]  *Court's Exhibit 1* at p. 1 (*Doc. 1* at p. 18).

[30]  *Id*.

[31] The record is unclear as to how many of the disciplinary complaints were filed *before* Johnson's trial in June 2009.  Respondent correctly points out that, from the press accounts of Hastings' disciplinary record, most of the incidents for which he was disciplined occurred *after* Johnson's trial.  All of these post-trial disciplinary complaints are irrelevant and do not constitute *Brady* material because it did not exist and could not have been produced *before* Johnson's trial. *See United States v. Haskell*, 468 F.3d 1064, 1075 (8th Cir. 2006).

records and not demanding that the prosecutor produce them, as allegedly required by *Brady*.

In making this argument, Johnson ignores the fact that Hastings had *only one disciplinary infraction* at the time of Johnson's June 17, 2009 trial. Furthermore, according to the newspaper articles that Johnson relies on to support his argument, this infraction took place in 2008 and was based on Hastings "failing to forward paperwork and investigative documents to others in the department, as well as releasing a burglary suspect at the scene to which he responded."[32]   As punishment, "Hastings received a one-day suspension."[33]   Because this was Hastings' only disciplinary record at the time of Johnson's trial, it was the *only record* that might arguably constitute *Brady* material.

Given the minor nature of Hastings' 2008 disciplinary infraction, misconduct, which involved misconduct that was *utterly unrelated* to the alleged misconduct described by Johnson during his arrest, it neither "corroborated" Johnson's version of events nor supported his claim of actual innocence.  This

---

In denying Johnson's *corum nobis* petition, the Arkansas Supreme Court cited the many problems with Johnson's *Brady* claim.   In considering Johnson's *Brady* claim, this Court must give deference to the Arkansas Supreme Court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

[32] *Johnson I*, *Doc. 2* at 14.

[33] *Id.*

undoubtedly weighed heavily in the Arkansas Supreme Court's decision to deny Johnson *corum nobis* relief on the ground that his alleged *Brady* claim lacked merit.

Finally, as indicated earlier, Johnson *admits* in his habeas papers that he *knew*, on the date Hastings arrested him (June 8, 2008), that word was circulating that Hastings "was a [r]acist and a [b]ully who systematically targeted blacks for arrest and unjustified, unreported beatings."[34]    Johnson suggests, without any accompanying explanation, that he was "justified" in remaining silent about these "facts" until he read the newspaper articles, *years later in the Fall of 2012*, about Hastings' workplace misconduct.   This entirely "new story" not only strains credulity, but also smacks of opportunism created by the newspaper articles describing Hastings' many "bad acts," virtually all of which were committed *long after* Johnson was convicted and sentenced.[35]

### B.    Johnson's Habeas Claims are Time-Barred

A prisoner seeking to challenge his state court conviction in federal court must file a petition for habeas relief within one year after the state judgment of

---

[34]  *Doc. 1*, at p. 3.

[35]  Johnson's belated new version of events is also at odds with the purpose of the Antiterrorism and Effective Death Penalty Act's 1-year limitations period for seeking federal habeas relief, which "quite plainly serves the well-recognized interest in the finality of state court judgments."  *Duncan v. Walker*, 533 U.S. 167, 179 (2001).

conviction becomes final by conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).  In certain "limited circumstances," however, the one-year limitations period may begin to run later than "the date on which the state judgment becomes final."[36]

Johnson seeks to bring this habeas action within one of the "limited circumstances" described in § 2244(d)(1)(D), which permits a filing within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  For the reasons explained below, Johnson is not entitled to the benefit of § 2244(d)(1)(D).[37]

---

[36] *Earl v. Fabian, 556 F.3d 717, 725 (8th Cir. 2009); see* 28 U.S.C. § 2244(d)(1)(B)-(D) (defining statutory tolling exceptions to the general rule).

[37] For convenience, the Court has listed the following dates, which are relevant to the timeliness of Johnson's habeas claims and "statutory tolling":

| | |
|---|---|
| **October 6, 2010**: | Arkansas Court of Appeals affirms Johnson's conviction; |
| **October 25, 2010**: | Period to file a petition for review with the Arkansas Supreme Court expired and AEDPA one year limitation under § 2244(d)(1)(A) started to run; |
| **October 25, 2011**: | AEDPA statute of limitations expires, under § 2244(d)(1)(A); |
| **September 17, 2012**: | Johnson initiates first habeas petition, *Johnson I*; |
| **January 14, 2015**: | Johnson files *coram nobis* petition with Ark. Supreme Court; |
| **April 7, 2015**: | *Johnson I* is dismissed, without prejudice; |
| **April 9, 2015**: | Ark. Supreme Court denies *coram nobis* petition; |
| **April 30, 2015**: | Johnson initiates this habeas action. |

The Arkansas Court of Appeals issued its opinion affirming Johnson's conviction on October 6, 2010.  *Doc. 6-5*.  Because Johnson failed to file a petition for rehearing, his conviction was considered "final" eighteen (18) days later, on October 25, 2010.[38]  Thus, Johnson had until and including October 25, 2011 to file a timely federal habeas petition.  Johnson initiated the current habeas petition on April 30, 2015, approximately 3½ years after the expiration of the one-year limitations period established by § 2244(d)(1)(A).[39]

---

[38]  *See* Ark. Sup. Ct. R. 2-3 (providing that a petition for rehearing must be filed within 18 calendar days of the appellate decision).  *King v. Hobbs*, 666 F.3d 1132, 1135-36 & n.4 (8th Cir. 2012) (for purposes of triggering the statute of limitations, the "conclusion of direct review" in cases from the Arkansas Court of Appeals includes the time allowed for petition for review from the Arkansas Supreme Court); *see also* G*onzalez v. Thaler*, 132 S. Ct. 641, 646 (2012) (For a state prisoner who does not seek review in a state's highest court, the judgment becomes "final" on the date that the time for seeking such review expires).

[39]  On September 17, 2012, Johnson initiated his first habeas action in federal court. *Johnson I*, *Doc. 2*.  Even that action, however, was filed almost eleven months *after* the expiration of the one-year limitations period.

On April 7, 2015, the Court dismissed *Johnson I*, without prejudice, to allow Johnson to exhaust his *Brady* claim by seeking *coram nobis* relief in state court.  *Johnson I*, *Doc. 28*.  Before recommending dismissal, the Court considered whether it should stay Johnson's habeas action, but concluded it had no discretion to stay "because Johnson never presented his habeas claims in state court, [and] it [did] not present a mixed petition of exhausted and unexhausted claims." *Johnson I*, *Doc. 26*, at p. 12 (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)).  Since the *Rhines* decision, several other circuits have held that a district court may consider a stay of a habeas petition that raises only unexhausted claims to allow a petitioner to exhaust those claims without losing his place in federal court.  *See*, *e.g*., *Mena v. Long*, 813 F.3d 907 (9th Cir. 2016); *Doe v. Jones*, 762 F.3d 1174, 1178-84 (10th Cir. 2014). The Eighth Circuit has not addressed this issue.

Even if the Court had conducted a *Rhines* analysis of Johnson's first habeas action, he could not have satisfied his burden of showing that:  (1)  good cause existed for his failure to exhaust his claim in state court;  (2)  his unexhausted claim was not meritless; and (3)  he had not

Johnson argues that he is entitled to the later filing deadline found in § 2244(d)(1)(D) because he did not become aware of the "factual predicate" for his habeas claims until September of 2012, when he read the newspaper articles about "Hastings' chronic misconduct" and he "began to believe that there was hope for the truth to also come out in his case."[40]   Of course, to obtain the benefit of this later filing deadline, Johnson must also show that, even with the exercise of "due diligence," he could not have discovered the "factual predicate" of his claims sooner.  Johnson simply has *not* demonstrated that he exercised the "due diligence" required by §2244(d)(1)(D).

Due diligence obligated Johnson to "make reasonable efforts to discover the facts supporting his claims."  *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008); see *also Frazier v. Rogerson*, 248 F. Supp. 2d 825, 833 (N.D. Iowa 2003) ("[C]ourts appear to require that the defendant show some kind of measure of prudence, activities or assiduity as may be properly expected from and

---

engaged in abusive litigation tactics or intentional delay.  *Rhines*, 544 U.S. at 277-78 (explaining that "stay and abeyance should be available only in limited circumstances").

      Finally, Johnson's first habeas action was filed eleven months after the expiration of the one-year statute of limitations contained in § 2244(d)(1)(A), which meant his state *coram nobis* petition, filed in January of 2015, had no tolling effect.  *See Jackson v. Ault*, 452 F.3d 734, 736–36 (8th Cir. 2006) (the statute of limitations for federal habeas petitions is not tolled during the pendency of a state proceeding brought after the limitations period has expired).

[40]  *Doc. 1* at 5 and *Doc. 7* at 1.

ordinarily exercised by a reasonable and prudent person under the particular circumstances present").

The Arkansas Freedom of Information Act ("FOIA"), in effect at the time of Johnson's arrest and trial, authorized either Johnson *or* his counsel to request a copy of any final disciplinary actions against Hastings.  *See* Ark. Code Ann. § 25-19-105 (versions in effect before July 27, 2011); Ark. Att. Gen. Opinion No. 2009-067.  Neither of them sought to obtain that information through a FOIA request.[41] Furthermore, even if they had done so, all they would have discovered was that Hastings had *one final disciplinary action* for "failing to forward paperwork and investigative documents to others in the department, as well as releasing a burglary suspect . . . ."[42]  Assuming that disciplinary conviction constituted *Brady* material, Johnson has presented no arguments or offered any evidence to satisfy Brady's prejudice requirement.  As previously explained, the impeachment value of such a minor and largely irrelevant disciplinary conviction is nil, and it has no probative value with regard to Johnson's guilt or innocence.  *Collier v. Norris*, 485 F.3d 415,

---

[41]  Arkansas' FOIA statute was amended, effective July 27, 2011, to deny persons convicted of a felony and incarcerated in a correctional facility from having access to public records, except through counsel.  *See*, *e.g.*, Ark. Code Ann. § 25-19-105(a)(1)(B) (2014).  After July 27, 2011, Johnson's incarceration status prevented him from obtaining Hastings' disciplinary record through the FOIA.  *See Holt v. Howard*, 806 F.3d 1129 (8th Cir. 2015) (rejecting constitutional challenge to Arkansas' FOIA for only allowing incarcerated felons to request public records information through an attorney).

[42]  *Johnson I*, doc. 2 at 14.

422 (8th Cir. 2007) (explaining that habeas petitioner did not prove prejudice because he failed to show that there was a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different) (omitting citation and internal quotations).

Johnson's lack of diligence is even more glaring given his *admission* that *he knew*, at the time of his arrest and trial, that: (1) Hastings had a reputation for violence against African-Americans; (2) Hastings targeted him because of his race; (3) Hastings planted drugs on him after Johnson refused to act as an informant; and (4) Hastings, without any provocation, physically assaulted him.[43] Finally, Johnson contends that he conveyed all of these facts to his trial counsel, but was advised to keep quiet because Hastings had "powerful friends."[44]

As previously explained, at the time of Johnson's trial, Hastings had only *one minor disciplinary conviction*, for misconduct that paled in comparison to what Johnson alleges he already knew about Hastings being a "rogue cop" at the time of his arrest. This admission by Johnson seriously undermines the merits of his

---

[43] *Doc. 1*, at 2-4.

[44] Johnson's ineffective assistance of counsel claim is based solely on his counsel's failure to conduct an adequate investigation to discover the alleged "*Brady* material." He has *not* asserted an ineffective assistance of counsel claim based on his attorney's alleged advice not to testify based on Hastings having "powerful friends."

*Brady* claim[45] and weighs heavily against a finding that he acted with due diligence in pursuing his claims.

Because Johnson has failed to show that he is entitled to the benefit of statutory tolling under § 2244(d)(1)(D), the one-year limitations period began to run on October 25, 2010 (the deadline for filing a petition for review with the Arkansas Supreme Court) and expired one year later, on October 25, 2011. Thus, this habeas action, initiated on April 30, 2015, is time-barred.

For similar reasons, the 2012 newspaper articles do not provide a basis for equitable tolling of the one-year limitations period. A petitioner may be entitled to equitable tolling if he shows: (1) he has been "pursuing his rights diligently," but (2) some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010).

_____

[45] Because Johnson's habeas Petition is untimely, it is unnecessary to reach the merits of his *Brady* claim, which can only be described as extremely weak. First, because Hastings' single minor disciplinary conviction is largely irrelevant and of almost no value as impeachment evidence, it does not constitute *Brady* materiality. *Miller v. Dretke*, 431 F.3d 241 (5th Cir. 2005). Second, the prosecution's *Brady* obligation did not require it to supply Johnson and his attorney with evidence they could have obtained for themselves under Arkansas's FOIA. *See U.S. v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005), as amended (Mar. 8, 2005) ("the government is not obliged under *Brady* to furnish a defendant with information which he already has, or with any reasonable diligence, he can obtain himself") (internal quotation marks omitted); *U.S. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009) (no *Brady* violation resulting from government's failure to produce the transcript of prosecution witness's state court testimony in an unrelated case where the defendant cross-examined the witness about the results of that trial, and because he "could have obtained a copy of the transcript himself.").

First, the Court has already discussed the fact that Johnson knew or could have discovered the factual basis for his habeas claims during the running of the one-year limitations period. Second, Johnson has not alleged, much less demonstrated, any "extraordinary circumstances" as required by *Holland*. The Eighth Circuit has repeatedly held that equitable tolling cannot be justified based on a petitioner's *pro se* status, lack of legal knowledge or legal resources, or any confusion about the federal limitations period or state post-conviction law. *See*, *e.g.*, *Johnson v. Hobbs*, 678 F.3d 607, 611 (8th Cir. 2012); *Shoemate v. Norris*, 390 F.3d 595, 597-98 (8th Cir. 2004). Accordingly, Johnson is not entitled to any equitable tolling.

## B.    Johnson's "Actual Innocence" Claims Fail

Johnson argues that Hastings' disciplinary record establishes his "actual innocence," both as a gateway claim to excuse his late filing of this habeas action and as a freestanding claim. For the reasons discussed below, the Court concludes that Johnson's actual innocence arguments are without merit.

### 1.    Johnson's "gateway claim" of actual innocence

Johnson argues that he is entitled to equitable tolling because he is "actually innocent." In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Court explained that "actual innocence, if proved, serves as a gateway through which a

19

petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." The Court went on to "caution, however, that tenable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (*quoting Schlup v. Delo*, 513 U.S. 298, 329 (1995) (internal quotations and alterations omitted). The actual-innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324.

In support of his gateway claim, Johnson again relies on the newspaper articles describing Hasting's criminal charges arising from his involvement in the August 2012 shooting, and his prior record of disciplinary convictions. This alleged "new evidence" falls far short of what is required to support a gateway claim of actual innocence. Even if Johnson had been able to use Hastings' single minor 2008 disciplinary conviction to attack his credibility at trial, that evidence would *not* have been sufficient to "show that it is more likely than not that no reasonable juror would have convicted" Johnson after hearing such innocuous

impeachment evidence. *Schlup*, 513 U.S. 298, 327 (1995).[46] *See Dansby v. Norris*, 682 F.3d 711, 717 (8ᵗʰ Cir. 2012) ("Latter-day impeachment evidence, however, will seldom, if ever, make a clear and convincing case that no reasonable jury could believe the core of the witness's account.") (internal quotations omitted), *vacated on other grounds*, 133 S. Ct. 2767 (2012); *Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) ("Actual innocence means factual innocence, not mere legal insufficiency.") (internal quotations and alterations omitted); *Cagle v. Norris*, 474 F.3d 1090, 1099 (8ᵗʰ Cir. 2007) ("in non-capital cases the concept of actual innocence is easy to grasp, because it simply means the person didn't commit the crime.").

Additionally, the evidence at trial undercuts Johnson's belated contention that the drugs were not his but were planted on him by Hastings. Hastings testified that, upon his arrival at the crime scene, he saw Johnson throw something under a pick-up truck before fleeing the scene on foot. Officer O'Kelley testified that he found the drugs by the truck, near where Hastings asked him to search. [47] Under Johnson's version of events, either: (1) Officer O'Kelley was a participant in the

---

[46] In *Schlup*, the Court provides several examples of "reliable evidence" that might meet that high evidentiary standard, including "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Id.* at 324.

[47] *Doc. 6-11* at 17, 58-59, 68.

scheme to plant the drugs, something that is unsupported by any evidence in the record; or  (2) Hastings threw the drugs under the truck *before* starting to chase down Johnson,  which meant he was "anticipatorily" planting drugs on someone he might or might not be able to run down.  Apart from Johnson's own self-serving statements in his habeas papers, there are *no facts* in the record which support his belated contention that because Hastings allegedly planted the drugs on him, he is actually innocent.

Finally, in assessing Johnson's claim of actual innocence, the Court must consider his lack of diligence.  *See McQuiggin*, 133 S.Ct. at 1982 ("Our opinion clarifies that a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.").  To counter Respondent's contention that he failed to act diligently, Johnson points out that:  (1) he filed his habeas petition in *Johnson I* within 30 days of learning of the newspaper article documenting Hastings' disciplinary history;  (2)  he filed his petition seeking *coram nobis* relief with the Arkansas Supreme Court within 30 days of receipt of the Recommended Disposition in *Johnson I*;  and (3) he initiated this habeas action within 30 days

after the Arkansas Supreme Court denied *corum nobis* relief.[48]  Johnson, however, fails to address his 3½ year delay in demonstrating *any diligence* in pursuing his habeas claims, despite his admission that, at the time of his arrest in June of 2008, he knew all about Hastings' reputation as a "rogue cop."

For all the foregoing reasons, the Court concludes that Johnson's gateway actual innocence claim is without merit.  Accordingly, it cannot serve as a basis for excusing his failure to timely seek federal habeas relief within the applicable one year statute of limitations.

### 2.    Johnson's "freestanding claim" of actual innocence

The Court's decision in *McQuiggin v. Perkins*, 133 S. Ct. at 1931, did *not* resolve "whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."  Even if this Court assumes that such a claim is cognizable, the law is clear that the burden required to establish a freestanding actual innocence claim is *greater than* the burden required to establish a gateway actual innocence claim.  *House v. Bell*, 547 U.S. 518, 555 (2006) (finding that although petitioner had established a gateway innocence claim such that his procedurally defaulted constitutional claims would be considered, such evidence fell short of the "extraordinarily high" showing required for a

---

[48]    *Doc.* 7 at 2.

"hypothetical freestanding innocence claim"); *Dansby v. Hobbs*, 766 F.3d 809 (8th Cir. 2014) (relying on *House* to reject petitioner's freestanding actual innocence claim).

As previously explained, Johnson has failed to establish a gateway actual innocence claim. *A fortiori*, his freestanding actual innocence claim also fails.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus be DENIED, and this case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 15th day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

24